IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

RAJENDRA PATEL, NAVNEET PATEL,       )
and NAVRAJ GROUP, LLC (a Tennessee   )
Limited Liability Company),          )
                                     )       NO. 3:20-cv-00052
        Plaintiffs,                  )       JUDGE RICHARDSON
                                     )
v.                                   )
                                     )
AR GROUP TENNESSEE, LLC (a New       )
Jersey Limited Liability Company), ALI S. )
BUTT, MOURAD ELAYAN, and             )
DINESH GOSWAMI,                      )
                                     )
        Defendants.                  )

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs' Motion for Preliminary Injunction, Appointment of

a Receiver, and for an Accounting (Doc. No. 23, "Motion"),  filed on April 13, 2020 by Plaintiffs

Rajendra Patel, Navneet Patel, and Navraj Group, LLC ("Navraj Group"), together with a

memorandum in support (Doc. No. 24, "Plaintiffs' Opening Memorandum"). Defendants AR

Group Tennessee, LLC ("AR Group"), Ali S. Butt, Mourad Elayan, and Dinesh Goswami have

filed a response (Doc. No. 26, "Response"), and Plaintiffs have filed a reply (Doc. No. 29,

"Reply"). For the reasons discussed below, Plaintiffs' Motion is **DENIED**.

# BACKGROUND[1]

A. <u>Factual Background</u>

AR Group owns and operates eleven Popeyes Louisiana Kitchen Restaurants ("Popeyes") in Nashville, Tennessee. (Doc. No. 1-2). On or around June 5, 2017, the parties executed a Partnership Agreement, whereby Navraj Group was to obtain 15 percent ownership of AR Group as of November 1, 2017; Rajendra Patel and Navneet Patel each signed the document on behalf of Navraj Group. (Doc. No. 1-2 at 11-14).[2] On or around March 7, 2018, the parties executed a First Amendment to the Operating Agreement of AR Group, with Ali Butt selling Plaintiffs Rajendra Patel and Navneet Patel 15 percent ownership in the partnership and making them limited partners. (Doc. No. 1-2 at 5). These two documents represent the entirety of the agreement(s) between the two parties. Plaintiffs invested $250,000 and moved to Tennessee to operate the business. (Doc. No. 24 at 1). Plaintiffs currently own 15% of the partnership and the partnership properties. (Doc. No. 1-2 at 16). Defendants Ali Butt, Mourad Elayan, and Dinesh Goswami own the remaining 55%, 15%, and 15% of the partnership, respectively. (Doc. No. 1-2 at 16).

On or about April 6, 2020, Plaintiffs were terminated from operating Popeyes franchises. (Doc. No. 24-1 at 1). Plaintiffs claim that (1) Defendants improperly terminated Plaintiffs' operation of the restaurants, (2) Defendants have essentially cut Plaintiffs out of the partnership, (3) Defendants have hired illegal aliens resulting in fines from the U.S. Department of Labor and

---

[1] The following facts, unless somehow qualified herein, are taken as true for purposes of the Motion, because they are either: (1) asserted and evidentially supported at least to some degree by one party and not rebutted by the other side; (2) otherwise not in genuine dispute; (3) asserted and evidentially supported by one side to such an extent, or in such a manner, that they are credited by this Court even if rebutted to some extent by the other side; or (4) subject to judicial notice.

[2] Herein, cited page numbers are the numbers stamped on the applicable pages by the Clerk's Office, which may differ from the page numbers placed on the document by the author/filer of the document.

Case 3:20-cv-00052   Document 47   Filed 10/01/20   Page 2 of 21 PageID #: 574

a pending investigation by state and federal authorities, and (4) Defendants have filed a false damage claim with an insurance company. (Doc. No. 24-1 at 2–3). Defendants claim that Plaintiffs poorly operated the restaurants at issue, were repeatedly warned of their lacking performance, and were terminated in accordance with the agreement between the parties. (Doc. No. 27 at 2–3).

B. Procedural History

On December 18, 2019, Plaintiff commenced this action by filing a Complaint (Doc. No. 1-2) in the Chancery Court for Williamson County, Tennessee.[3] On January 17, 2020, Defendants

---

[3] Plaintiffs also filed an Amended Complaint on June 9, 2020, notably after the filing of the present Motion. (Doc. No. 36). The Amended Complaint re-alleges claims of intentional misrepresentation, conversion, and an action for an accounting, which are similar to the counts in their original Complaint that are referenced in the present Motion. (Doc. No. 1-2). The Amended Complaint combines the counts of intentional misrepresentation, rehashes the conversion count, and adds some detail. (Doc. No. 36 at 13-15). Attached to the Amended Complaint is some supporting documentation, including a spreadsheet that allegedly represents when illicit payments were made. (Doc. No. 36-3). The Amended Complaint also adds four claims for violation of RICO, breach of contract, retaliatory discharge, and breach of fiduciary duty. (Doc. No. 36). The Court has considered only the allegations in the original Complaint and the memoranda associated with the preliminary injunction in rendering its decision. When an amended complaint is filed after a preliminary injunction, some courts have found the motion for a preliminary injunction to be moot. *Gentry v. Tennessee Bd. of Judicial Conduct*, No. 3:17-0020, 2017 WL 2417829, at *2 (M.D. Tenn. June 5, 2017), *objections overruled sub nom. Gentry v. Tennessee*, No. 3:17-CV-0020, 2017 WL 3034695 (M.D. Tenn. July 18, 2017); *OnX USA LLC v. Sciacchetano*, No. 1:11CV2523, 2013 WL 950512, at *1 (N.D. Ohio Mar. 7, 2013). Other courts have ruled on a preliminary injunction motion filed prior to an amended complaint to the extent the plaintiffs have shown a likelihood of success on the merits. *Vita-Mix Corp. v. Tristar Prod., Inc.*, No. 1:07 CV 275, 2008 WL 11383504, at *1 n.1 (N.D. Ohio Sept. 30, 2008) (noting the subsequent filing of a Second Amended Complaint and addressing the additional claim in the Second Amended Complaint in ruling on the preliminary injunction motion); *Griffin v. Countrywide Home Loan Servicing, LP*, No. 2:11-CV-00953-GMN, 2012 WL 1079187, at *1 (D. Nev. Mar. 30, 2012), *aff'd sub nom. Griffin v. Countrywide Home Loans Servicing, L.P.*, 592 F. App'x 586 (9th Cir. 2015) (addressing merits of preliminary injunction motion despite the subsequent filing of an amended complaint); *3M Co. v. Christian Investments LLC*, No. 1:11CV627, 2011 WL 3678144, at *2 (E.D. Va. Aug. 19, 2011) (considering preliminary injunction despite subsequent amended complaint adding and dropping various parties). After filing the Amended Complaint, Plaintiffs never filed an amendment to the present Motion; indeed, in prosecuting this Motion, Plaintiffs never relied on the Amended Complaint nor otherwise gave the Court reason to believe that the Amended Complaint somehow increased (or reflected an increase in) their likelihood of success on the merits. Because the present Motion was based solely on the original Complaint, the Court has cited throughout this opinion to the original

removed this action to (this) federal court. (Doc. No. 1). On April 13, 2020, Plaintiffs filed the instant Motion. (Doc. No. 23). Plaintiffs also filed a Memorandum of Facts and Law in support of the Motion. (Doc. No. 24). Defendants filed their Response on April 27, 2020. (Doc. No. 26). Plaintiffs filed their Reply on May 4, 2020. (Doc. No. 29).

## LEGAL STANDARD

The Sixth Circuit has held that the district court must balance four factors when considering a motion for preliminary injunction under Federal Rule of Civil Procedure 65: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether the issuance of the injunction would cause substantial harm to the opposing party or others; and (4) whether the public interest would be served by the issuance of the injunction. *Bays v. City of Fairborn*, 668 F.3d 814, 818–19 (6th Cir. 2012). The second of these factors, irreparable injury absent the injunction, must be present in order for the Court to issue the requested preliminary injunction. *See, e.g.*, *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982) ("Whatever the merits of the alternate, or 'balance of hardships' test may be, the purpose of the test is surely not to eliminate the irreparable harm requirement."). Otherwise, though, these four items are not prerequisites that must be satisfied in order for a preliminary injunction to be issued, but rather factors to be balanced

---

Complaint. The Court notes that the Amended Complaint closely tracks the original Complaint as to the three state law claims discussed in the present Motion. The Amended Complaint does add some additional factual allegations, but Plaintiffs at no point argue that these increase the likelihood of success on the merits. Regardless, the Court would find these additional allegations insufficient to carry Plaintiffs' burden in a preliminary injunction motion. Despite the discussion of the original Complaint throughout this opinion, the Court recognizes that the legally operative complaint in this matter at this time is the Amended Complaint. *See Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000).

against one another based on their respective strength relative to one another. *See D.T. v. Sumner Cty. Schools,* 942 F.3d 324, 326–27 (6th Cir. 2019) (citations omitted).[4]

Regarding the second factor, irreparable harm, "even the strongest showing on the other three factors cannot eliminate the irreparable harm requirement. That factor is indispensable." *Id.* (citation and internal quotation marks omitted); *see also Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 967 (6th Cir. 2002) ("The demonstration of some irreparable injury is a sine qua non for issuance of an injunction."). In other words, "although the *extent* of an injury may be balanced against other factors, the *existence* of an irreparable injury is mandatory." *Sumner Cty. Sch.*, 942 F.3d at 327. Thus, a district court abuses its discretion if it grants a preliminary injunction without making specific findings of irreparable injury. *Id.*[5] And to merit a preliminary injunction, an injury must be both certain and immediate, not speculative or theoretical. *Id.*

_____

[4] The Court is aware that confusion was created when language in some cases appeared to state that a "balance of hardships" test was an alternative to the traditional irreparable harm test for injunctive relief. *See Friendship Materials, Inc.*, 679 F.2d at 105. The balance of hardships test, however, does not eliminate the irreparable harm requirement. *Id.* As the Sixth Circuit noted last year:

> Courts sometimes describe this inquiry as a balancing test. *See, e.g., Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007); *In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 859 (6th Cir. 1992). And that's true, to an extent; district courts weigh the strength of the four factors against one another. But even the strongest showing on the other three factors cannot "eliminate the irreparable harm requirement." That factor is indispensable: If the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief now as opposed to at the end of the lawsuit. That's why this circuit has held that a district court abuses its discretion "when it grants a preliminary injunction without making specific findings of irreparable injury[.]" Thus, although the extent of an injury may be balanced against other factors, the existence of an irreparable injury is mandatory.

*Sumner Cty. Schools*, 942 F.3d at 326–27 (citations omitted).

While the absence of irreparable injury is always fatal to a motion for a preliminary injunction, "[a] finding that there is simply no likelihood of success on the merits is *usually* fatal." *Gonzalez v. Nat'l Bd. of Medical Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) (emphasis added). "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566, 573 (6th Cir. 2003). "The party seeking a preliminary injunction bears a burden of justifying such relief, including showing irreparable harm and likelihood of success." *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 600 (6th Cir. 2014) (quoting *Michigan Catholic Conf. & Catholic Family Servs. v. Burwell*, 755 F.3d 372, 382 (6th Cir. 2014)).

Plaintiffs seeking a preliminary injunction may not merely rely on unsupported allegations, but rather must come forward with more than "scant evidence" to substantiate their allegations. *See e.g.*, *Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 417 (6th Cir. 2014); *Cameron v. Bouchard*, 815 F. App'x 978, 986 (6th Cir. 2020) (vacating preliminary injunction when plaintiffs made no evidentiary showing on some elements of their claim, but instead made mere allegations regarding the treatment of Covid-19 in prisons); *McNeilly v. Land*, 684 F.3d 611, 614 (6th Cir. 2012) (upholding denial of preliminary injunction when plaintiff made only a "small showing" of evidence); *United States v. Certain Land Situated in City of Detroit*, No. 95-1118, 1996 WL 26915, *1 n.1 (6th Cir. Jan. 23, 1996) (noting a lack of evidence to support speculative allegations); *Boulding v. Corr. Med. Servs.*, No. 1:06-CV-811, 2008 WL 2095390, at *1 (W.D. Mich. Feb. 11, 2008), *report and recommendation adopted*, No. 1:06-CV-811, 2008 WL 2095387 (W.D. Mich. May 15, 2008) ("Plaintiff did not marshal any evidence in support of his motion [for a preliminary injunction]. Plaintiff's unsupported allegations do not suffice". (citations omitted)). In deciding a motion for preliminary injunction, a court may consider the entire record, including affidavits and other

hearsay evidence. *Sterling v. Deutsche Bank Nat'l Tr. Co.,* 368 F. Supp. 3d 723, 725 (S.D. N.Y. 2019); *J.S.R. by & through J.S.G. v. Sessions*, 330 F. Supp. 3d 731, 738 (D. Conn. 2018). In conducting the preliminary injunction analysis, the Court is not limited to the four corners of the complaint but rather may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceeding. *Express Franchise Servs., L.P. v. Impact Outsourcing Sols., Inc.*, 244 F. Supp. 3d 1368, 1379 (N.D. Ga. 2017); *Action NC v. Strach*, 216 F. Supp. 3d 597, 629 (M.D.N.C. 2016) (explaining that district courts may look to, and indeed in appropriate circumstances rely on, hearsay or other inadmissible evidence when deciding whether a preliminary injunction is warranted).

Notably, the decision whether to grant a preliminary injunction is a matter within the discretion of the district court. *Tenn. Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 447 (6th Cir. 2009).

## DISCUSSION

I. Preliminary Injunction[6]

      Plaintiffs have moved for a preliminary injunction enjoining Defendants from selling AR

Group or, alternatively, if the company is sold, to have the assets held by a receiver pending further

orders of the Court. (Doc. No. 23 at 1). Plaintiffs have also moved for a full accounting and access

to Defendants' books and records and for appointment of a receiver. (Doc. No. 23 at 1). At this

juncture, the Court is not deciding the ultimate merits of Plaintiffs' case against Defendants.

Rather, the Court is called upon to determine whether Plaintiffs have presented evidence sufficient

to show that a preliminary injunction is warranted at this time. As discussed below, the Court

---

[6] The Court has taken the effort to go through each of the four factors of a preliminary injunction. However, the Court again emphasizes that the grant of a preliminary injunction is in the discretion of the district judge. Even if the factors cut in favor of a preliminary injunction (which, as discussed, they do not in the instant case), this Court would not exercise its discretion to grant a preliminary injunction when no proper purpose is served. Much of the purpose of a preliminary injunction is to preserve the status quo while the case works its way towards a resolution. *S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 848 (6th Cir. 2017) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *Corbin v. Texaco, Inc.*, 690 F.2d 104, 105 (6th Cir. 1982). According to the Fifth Circuit, "[t]he purpose of a preliminary injunction is to preserve the status quo during litigation to determine the merits of the case for permanent injunction." *Hollon v. Mathis Indep. Sch. Dist.*, 491 F.2d 92, 93 (5th Cir. 1974). And the Eleventh Circuit has described "the textbook definition of a preliminary injunction [as one] issued to preserve the status quo and prevent allegedly irreparable injury until the court had the opportunity to decide whether to issue a permanent injunction." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1261, 1262 (11th Cir. 2005) (internal quotation marks omitted). That is, according to some courts, "[a] preliminary injunction is designed to preserve the *status quo* until a final hearing or trial can be held on a request for a permanent injunction." *Youngblood v. Wilson*, No. 3:07-CV-0079 PS, 2008 WL 215739, at *1 (N.D. Ind. Jan. 24, 2008) (quoting *Moore's Federal Practice and Procedure* § 65.04(1)). Relatedly, the Court notes that "[l]itigants are not entitled to greater temporary remedies pending litigation than they would be entitled to as the ultimate prevailing party." *Gomez v. United States*, 899 F.2d 1124, 1127 (11th Cir. 1990).

      Plaintiffs have made no request for a permanent injunction in this case, and they had made no showing that ordering a preliminary injunction to enjoin the sale of the business would preserve the status quo while their unrelated claims of intentional misrepresentation and conversion advance towards a final resolution. The Court would not exercise its discretion to issue a preliminary injunction when no valid purpose is served, and the Court finds that this reasoning could perhaps be enough to dispose of this Motion on its own.

answers that question in the negative; Plaintiffs have failed to show that the extraordinary remedy of a preliminary injunction is warranted in this case. Plaintiffs' evidentiary showing and argument collectively fall short on two critical factors: (1) strong likelihood of success on the merits and (2) irreparable harm.

A. Likelihood of Success on the Merits

Plaintiffs bring four claims against Defendants including several state law claims: (1) two claims of intentional misrepresentation; and (2) a claim for conversion. (Doc. No. 1-2 at 5–7). The Court will address Plaintiffs' likelihood of success as to the misrepresentation and conversion claims in turn.

1. Intentional Misrepresentation

Plaintiffs claim that Defendants made intentional misrepresentations by (1) not paying Plaintiffs the promised profit and salary, and (2) producing false profit and loss statements on which Plaintiffs then relied in moving to Tennessee, signing the Partnership Agreement and First Amendment to the Operating Agreement, and investing in the partnership. (Doc. No. 1-2 at 8).

When analyzing a state law tort claim, a federal court sitting in diversity will typically look to substantive state law. *See Performance Contracting Inc. v. DynaSteel Corp.*, 750 F.3d 608, 611 (6th Cir. 2014) *(quoting Erie R.R. v. Tompkins,*" 304 U.S. 64, 78 (1938)). But sometimes when the substantive law of two or more different states conceivably could be deemed applicable to the case, the court faces a threshold issue as to which state's law governs the case. *See id.* To resolve such an issue, the court applies the choice-of-law rules of the state in which the court sits. *See id.*

However, the Court here need not decide whether Tennessee or New Jersey law applies at this juncture, since both Tennessee and New Jersey require a plaintiff to show similar elements to succeed in a claim of intentional misrepresentation. Under Tennessee law, a plaintiff must show: "(1) the defendant made a representation of an existing or past fact; (2) the representation was false

9

when made; (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) plaintiff reasonably relied on the misrepresented material fact; and (6) plaintiff suffered damage as a result of the misrepresentation." *Stanfill v. Mountain*, 301 S.W.3d 179, 188 (Tenn. 2009) (quoting *Walker v. Sunrise Pontiac–GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008)). Under New Jersey law, a Plaintiff must show "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by [d]efendant of its falsity; (3) an intention that the plaintiff rely upon the fact; (4) the plaintiff's reasonable reliance upon it; and (5) resulting damages." *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 704 (D.N.J. 2011). For purposes of the instant analysis, the respective sets of elements do not differ materially from one another.

In Plaintiffs' Opening Memorandum, Plaintiffs address likelihood of success on the merits only in the following terse passage:

> The Plaintiffs invested time and money into a business relationship with the Defendants. The Defendants have failed to uphold their end of the bargain and are converting all monies to their benefit, which is to the Plaintiffs' detriment. The Defendants have not provided inspection of the books and records as mandated by law, and initially provided false P&Ls that were misrepresentations. The Plaintiffs *will* be able to satisfy this element.

(Doc. No. 24 at 3) (emphasis added).

In referring to "this element," Plaintiffs appear to mean a likelihood of success on the merits as to their claims, including the claim for intentional misrepresentation. But it is not enough for Plaintiffs to claim that they *will* be able to show a likelihood of success of the merits. They must show such likelihood *now*, in connection with their motion for a preliminary injunction. And Plaintiffs have failed to do so. Though Plaintiffs' Opening Memorandum was filed together with two declarations, Plaintiffs' Opening Memorandum failed to cite those declarations here or explain how they support a finding of likelihood of success on the merits on the claim of intentional

misrepresentation; as noted, Plaintiffs instead have relied solely on the blithe assertion that they will be able to make such a showing. Then in their Reply,

> Plaintiffs have presented the limited evidence available to them to establish a pattern of fraudulent and illegal conduct—sworn affidavits of Mr. Patel and one former employee. Despite their limited access to evidence, Plaintiffs have demonstrated a likelihood of success on the merits, which Defendants failed to meaningfully rebut in their response, even though they have all the evidence at their fingertips.

(Doc. No. 29 at 3). To the extent that Plaintiffs seek to be excused from not making the required showing on the grounds that this is Defendants' fault, the Court can recognize no such excuse at this stage; the Court's responsibly is to decide, based on the current record, whether Plaintiffs have shown a substantial likelihood of success on the merits. As to that question, Plaintiffs have done no more than make the conclusory assertion that their affidavits (declarations) establish a likelihood of success on the merits, without even discussing those declarations anywhere in their briefing, let alone explaining how the declarations indicate a substantial likelihood of success on each element of Plaintiffs' various claims. If a party wants an extraordinary remedy such as a preliminary injunction, it simply must do more than file declarations with alleged facts and then leave it entirely to the Court to figure out how those facts relate to the party's particular claims and whether they likely would establish the party's claims. And even if the Court were to take it upon itself to undertake this review, it could find nothing in the declarations to support either of Plaintiffs' two claims of intentional misrepresentation.[7]

---

[7] The Complaint alleges, among other things, that Defendants "orally misrepresented the financial stability and the expenses of [AR Group] prior to the Plaintiffs entering into the Partnership agreement," "collectively misrepresented that the money they allegedly and purportedly invested in the partnership was actually borrowed by them," "misrepresented prior to and up to June 2018 that the Plaintiffs would be paid $650,000.00. in profit per annum," and that "[t]hese representations were false when made and known to be false at the time." (Doc. No. 1-2 at 5–6). The Complaint also claims that Plaintiffs reasonably relied upon these false misrepresentations and were substantially damaged. (Doc. No. 1-2 at 7–8). Plaintiffs' first claim of intentional

For all of these reasons, and contrary to Plaintiffs' suggestion, there was never anything for Defendants to rebut in this regard. Plaintiffs have failed to show that they would be likely to succeed on any of their claims, including the claim of intentional misrepresentation.

2. Conversion

According to the Complaint, "Defendants have exercised dominion and control over the funds of the partnership and the Plaintiffs intentionally used the money to pay for expenses unknown to or unapproved by the Plaintiffs such as the payment to the bank for the Defendants' borrowed investment." (Doc. No. 1-2 at 8). Plaintiffs here clearly have an unfortunate typographical error; if one did not gather that they meant "Defendants" where they said "Plaintiffs," one would think that they were accusing themselves of pulling a fast one on themselves. In any event, this alleged conduct of Defendants "constitutes the tort of conversion," according to the Complaint. (*Id.* at 9). In the above-quoted paragraph, Plaintiffs (albeit with extreme brevity) assert that Defendants are converting all money to their benefit and imply that they likely will be able to show a likelihood of success on the merits on their claim of conversion.[8] (Doc. No. 24 at 3). Otherwise, Plaintiffs have nothing to say about likelihood of success on the merits.

---

misrepresentation is premised both on the alleged representation that Plaintiffs would receive profit sharing in the amount of $650,000 per year and on alleged false profit and loss statements that allegedly induced them to enter into the June 5 Partnership Agreement, and the second claim of intentional misrepresentation is premised on other "false representations and false documents" that allegedly induced them to enter into the Partnership Agreement and the First Amendment to the Operating Agreement. (*Id.*). The declarations offered by Plaintiff, of Rajendra Patel (Plaintiff) and Mark Smith (former employee of AR Group), do not present any evidence on either such claim.

[8] The likelihood of success on the merits of conversion was addressed in Plaintiffs' Opening Brief in the same terse few sentences as the likelihood of success on the merits of intentional misrepresentation. (Doc. No. 24 at 3). The Complaint additionally claimed that Defendants exercise control over the funds of the partnership and that they intentionally use that money to pay for unknown and unapproved expenses. (Doc. No. 1-2 at 8–9).

Again, the Court need not decide whether Tennessee or New Jersey law applies at this juncture, since both Tennessee and New Jersey require similar elements be met for a claim of conversion. Under Tennessee law, a Plaintiff must show "(1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights." *PNC Multifamily Capital Inst. Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 553 (Tenn. Ct. App. 2012). Similarly, the elements of conversion under New Jersey law are "(1) the existence of property, (2) the right to immediate possession thereof belonging to plaintiff, and (3) the wrongful interference with that right by defendant." *Rickerson v. Pinnacle Foods Inc.*, No. 17-cv-4469, 2018 WL 1704788, at *2 (D.N.J. Apr. 9, 2018) (quoting *City of Atl. City v. Zemurray St. Capital, LLC*, No. 14-5169, 321 F.R.D. 215, 2017 WL 6638203, at *18 (D. N.J. Dec. 29, 2017)).

Plaintiffs fail to show a likelihood of success on the merits of this claim for the same reason they failed to show a likelihood of success on the prior claim: they simply have not done the work to explain why the evidence they have offered (*i.e.,* testimony from two declarations) is likely to establish all elements of a claim of conversion.

And even if the Court did take it upon itself to scour the declarations, which it actually has done here as it did with the first claim (perhaps against its better judgment), they do not provide enough evidence to satisfy the burden Plaintiff carries in a motion for preliminary judgment to show a strong likelihood of success on the merits of a conversion claim. The Declaration of Rajendra Patel indicates that Defendants have ended Plaintiffs' access to bank accounts and other Partnership property. (Doc. No. 24-1). Mark Smith's declaration states that "[o]n one occasion, Navneet Patel had confirmed the funds were available but by the time I deposited my paycheck, the funds had been depleted and my paycheck was returned for insufficient funds. Navneet Patel

corrected it for me the next day. All the bank accounts and money were controlled by the individual Defendants to this action." (Doc. No. 24-2 at 3). Although Plaintiffs argue that these statements indicate that Defendants had sole access to the partnership bank accounts and improperly took money in which Plaintiffs had a possessory interest, the Court does not find the description of one incident of insufficient funds in the Partnership bank account to be sufficient evidence that Plaintiffs are likely to succeed on the merits of their conversion claim, especially where (as indicated above) Plaintiffs have not bothered to explain why all elements of conversion claim are satisfied.[9]

In short, Plaintiffs have failed to show a likelihood of success on the merits. This factor weighs very heavily against the issuance of a preliminary injunction, and is not far from being fatal to the Motion by itself.

B.  Irreparable Harm

Plaintiffs have also failed to demonstrate that they will be irreparably harmed absent preliminary injunctive relief from the Court. Plaintiffs argue that they will be irreparably injured because Defendants have not paid Plaintiffs, Defendants will keep all proceeds upon any sale, the entity will cease operation, and Plaintiffs face "financial ruin."[10]  (Doc. No. 24 at 3). Defendants deny the allegation of a forthcoming sale or any intent to sell. (Doc. No. 27 at 3).

_____

[9] Notably, Plaintiffs' Reply does not even hint at such an explanation or even mention conversion at all. In addition, as suggested above, Plaintiffs' Reply is off base in claiming that Defendants had to rebut anything about any of Plaintiffs' claims, including the claim for conversion.

[10] In their Reply, Plaintiffs additionally claim irreparable injury will occur because of the Department of Labor's fines and the pending investigations, a pattern of illegal conduct, a false damage claim, and a failure to pay some contractors which could amount to a default under the Franchise Agreement. (Doc. No. 29 at 2). Rajendra Patel's declaration indicates that payments to illegal aliens have caused fines and an investigation, that Defendants have filed a false damages claim, and that Defendants have not paid contractors. (Doc. No. 24-1 at 2–3). Mark Smith's declaration states that an employee of AR Group continues to pay some employees in cash and

In his declaration, Plaintiff Rajendra Patel states that "[t]he individual Defendants have tried to sell these stores without informing Navneet [Patel] and I. When they received a low offer from Carrolls Group, they created a false sale agreement with another franchisee, Aziz Chitalwala, so Carrolls Group would have to match the new false price since they had the first right of refusal." (Doc. No. 24-1 at 3). In response, Defendant Dinesh Goswami states that the Franchisor pressured the partnership into seeking a sale due to the poor management by Plaintiffs. (Doc. No. 27 at 2). After Plaintiffs' terminations, sales improved and the Franchisor stopped pressuring the partnership to sell. (Doc. No. 27 at 3). Goswami additionally denies any present or immediate intention to sell, stating that "[a]t present, there is no sale, contemplated sale, or imminent sale of [AR Group] and/or any of its assets. There are no pending offers nor even current discussions of sale. Due to the extreme impact on market conditions and the conduct of most business amidst the current Covid-19 pandemic, [AR Group] does not anticipate any sale or even negotiations for sale of [AR Group] and/or any of its assets to transpire before 2021." (Doc. No. 27 at 3). The Court has no reason to discredit the assertions of Goswami in his declaration.

Plaintiffs have offered only their suspicions of an impending or immediate sale as evidence, and they have not carried their burden of showing that an irreparable injury would occur without a preliminary injunction. (Doc. No. 24-1 at 3). "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d

operates restaurants "in an underhanded and fraudulent manner." (Doc. No. 24-2 at 2–3). Though these acts, if true, are likely to cause irreparable harm to Plaintiffs' interests in the partnership, a preliminary injunction against the sale of partnership assets would not alleviate these harms. The required showing of irreparable harm cannot properly be premised on harm that would not be alleviated by the particular preliminary injunction being sought. *Madias v. Dearborn Fed. Credit Union*, 916 F. Supp. 659, 660 (E.D. Mich. 1996).

566, 573 (6th Cir. 2003). Based on Defendants' denial of a pending sale and a lack of evidence contradicting that denial, the Court has difficulty seeing how it can conclude that Plaintiffs cannot be made whole via eventual monetary damages. "As a general rule, a movant has not established irreparable harm where damages would adequately compensate the movant for the asserted harm." *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1382 (6th Cir. 1995) (citation omitted). Accordingly, the Court finds that Plaintiffs are not likely to suffer irreparable harm absent a preliminary injunction. This factor weighs against the issuance of an injunction. Indeed, as noted above, it is fatal to a request for a preliminary injunction

C. Substantial Harm to Defendant and Others

"The third factor for a court to consider is 'whether the issuance of the injunction would cause substantial harm to others.' " *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007). "In considering this factor, the Court must (1) balance the harm [p]laintiff would suffer if its request for a preliminary injunction were denied against the harm [d]efendant would suffer if an injunction were to issue, and (2) assess the impact the preliminary injunction might have on relevant third parties." *Procter & Gamble Co. v. Georgia–Pacific Consumer Prods. LP*, No. 1:09–318, 2009 WL 2407764, at *10 (S.D. Ohio Aug. 3, 2009); *Accord Trenton Corp. v. Superior Corrosion Control, Inc.*, No. 06–15699, 2007 WL 268792, at *6 (E.D. Mich. Jan. 25, 2007). Since Defendants have asserted no intentions of selling the partnership now or in the immediate future, Plaintiffs face no harm if the Motion is denied. On the other hand, Defendants have shown no harm that would occur to them if the Motion were to be granted; in fact, they could not do so, since they do not have any plans to sell AR Group, and thus no plans that would be disrupted were the Court preliminarily to enjoin such a sale. Therefore, there is actually nothing for the Court to balance on this factor, and the balancing of harms does not weigh significantly in favor of (or against) issuing a preliminary injunction.

D.  <u>Public Interest</u>

The last factor in determining whether to grant a preliminary injunction "asks whether the public interest is advanced in issuing" the requested injunction. *Nat'l Hockey League Players Ass'n v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 720 n. 4 (6th Cir. 2003). In their Motion, Plaintiffs argue that a preliminary injunction would be in the public interest because "the employees of the multiple Popeye's Louisiana Kitchen restaurants would receive the wages and benefits they have earned." (Doc. No. 24 at 4). In their Response, Defendants contest the allegation that they are "not meeting payment obligations." (Doc. No. 26 at 7). Neither party offers any evidence of whether the employees are currently being paid or not, and in the absence of evidence of benefit or harm to the public, the Court does not find that this factor weighs in favor of granting a preliminary injunction.

II.  <u>Appointment of a Receiver</u>

In their Motion, Plaintiffs also request that a receiver be appointed.[11] (Doc. No. 23 at 1). Federal Rule of Civil Procedure 66 allows the Court to appoint a receiver in a federal case, and in a diversity action an appointment of receiver will generally be governed by federal, not state, law. *See Fed. Nat. Mortg. Ass'n v. Mapletree Inv'rs Ltd. P'ship*, No. 10–cv–10381, 2010 WL 1753112 at *2 (E.D. Mich. April 30, 2010). "A district court enjoys broad equitable powers to appoint a receiver over assets disputed in litigation before the court. The receiver's role, and the district court's purpose in the appointment, is to safeguard the disputed assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary." *Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006). "A

---

[11] Plaintiffs request both the appointment of a receiver if the company is sold and the general appointment of a receiver.

receivership is an 'extraordinary remedy' that a court should employ with the 'utmost caution' and grant 'only in cases of clear necessity to protect plaintiff's interests in the property.' " *Pension Ben. Guar. Corp. v. Evans Tempcon, Inc.*, 630 F. App'x 410, 414 (6th Cir. 2015) (quoting 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2983 (3d ed. 2014)). District courts consider a number of factors in deciding whether or not to appoint a receiver, including "whether the property at issue is in imminent danger of…being lost, concealed, injured, diminished in value, or squandered, whether the defendant engaged in fraudulent conduct, the inadequacy of the available legal remedies, the lack of less drastic equitable remedies, and the likelihood that the appointment will do more good than harm."[12] *Id.* (internal quotation marks and citation omitted). When a defendant remains active in litigation, the case is at an early stage with limited evidence, and there is no "significant showing of imminent catastrophe," the extreme and rare remedy of appointing a receiver will not be granted. *See Midkiff v. Ludt*, No. 1:18-CV-191, 2018 WL 7099016, at *5 (S.D. Ohio Apr. 11, 2018).

Plaintiffs argue that Defendants have fraudulently obtained Plaintiffs' investment, failed to pay money promised to Plaintiffs and others, and refused to allow Plaintiffs to view and inspect the records and books of the company. (Doc. No. 24 at 5). Additionally, the company allegedly is currently under an investigation by the Department of Labor and has incurred fines totaling $175,000. (Doc. No. 24-1 at 2). Plaintiffs contend that there have been instances of insurance fraud and altering of financial records. (Doc. No. 24-1 at 3–4). None of these allegations of fraud are linked to harming the Partnership assets or, if true, will cause the Partnership's assets to dissipate.

---

[12] This is not an exhaustive list. Courts have also considered the likelihood of success on the merits and other factors when determining whether a motion for an appointment of a receiver should be granted. *PNC Bank, Nat. Ass'n v. Goyette Mech. Co.*, 15 F. Supp. 3d 754, 758 (E.D. Mich. 2014). As discussed above, Plaintiffs here have not met their burden of showing a likelihood of success on the merits.

Indeed, there is no reason to believe that the extraordinary remedy of a receiver is necessary because of systematic fraud and ongoing risk to the partnership. Although Plaintiffs claim that the property at issue is in imminent danger of being lost or diminished, Defendants' assertion that there is no impending sale of the company indicates that Plaintiffs' concerns are not an imminent emergency requiring the rare relief of appointing a receiver.

Additionally, a receivership would likely cause more harm than good. The Franchise Agreement states that if a receivership is appointed, the franchisee will be in default of their agreement, and "all rights . . . shall automatically terminate."[13] (Doc. No. 26-1 at 46). Defaulting on the Franchise Agreement would cause harm to Defendants' employees and to current stores which are seeing an increase in net sales. (Doc. No. 27 at 3). Plaintiffs argue that this outcome is no worse than defaulting under a clause in the Franchise Agreement regarding illegal activity, as to which Plaintiffs supposedly have presented evidence.[14] (Doc. No. 29 at 2). Plaintiffs are incorrect. A default on the Franchise Agreement in the case of illegal activity is not automatic, as it would be upon the appointment of a receiver. Since appointing a receiver would result in an automatic default and termination of Defendants' rights under the Franchise Agreement, the Court finds that an appointment would cause Defendants significant immediate harm.

---

[13] The Franchise Agreement states that "[f]ranchisee shall be deemed to be in default under this Agreement, and all rights granted herein shall automatically terminate without notice to Franchisee, if…a receiver or other custodian (permanent or temporary) of Franchisee's assets or property, or any part thereof, is appointed by any court of competent jurisdiction." (Doc. No. 26-1 at 46).

[14] The Franchise Agreement states that "[f]ranchisee shall be deemed in default and Franchisor may, at its option, terminate this Agreement and all rights granted hereunder without affording Franchisee any opportunity to cure the default upon the occurrence of any of the following events… [f]ranchisee is convicted of or pleads guilty to a felony, a crime involving moral turpitude, or any other crime or offense that Franchisor believes is reasonably likely to have an adverse effect on the System, the Proprietary Marks, the goodwill associated therewith, or Franchisor's interest therein." (Doc. No. 26-1 at 47).

For these reasons, the Court declines to appoint a receiver in this matter.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Preliminary Injunction, Appointment of a Receiver, and for an Accounting is **DENIED**.[15] In making this determination, the Court does not suggest that Plaintiffs will be unable to prevail at trial or that any decision here constitutes any law of the case. *See Cold Heading Co. v. B&D Thread Rolling, Inc.*, No. 2:11-CV-15189, 2012 WL 13008688, at *13 (E.D. Mich. June 5, 2012), *adopted by*, No. 11-15189, 2012 WL 13012405 (E.D. Mich. July 19, 2012); *Bronson v. Board of Educ. of the City Sch. Dist. of Cincinnati*, 550 F. Supp. 941, 945 (S.D. Ohio 1982) ("[B]ecause the nature of findings made in connection with a preliminary injunction are inherently tentative, it is apparent, under established authority, that findings made on motions for preliminary injunctions do not estop the parties at the trial on the merits, and are neither determinative of the issues in the case, nor binding upon the parties or the Court at a subsequent trial.").

---

[15] "An accounting is a species of disclosure, predicated upon the legal inability of a plaintiff to determine how much, if any, money is due him from another. It is an extraordinary remedy, and like other equitable remedies, is available only when legal remedies are inadequate." *Bradshaw v. Thompson*, 454 F.2d 75, 79 (6th Cir. 1972). When adequate remedies at law and discovery options are available, an accounting is inappropriate. *Id.*; *Cox v. Mortg. Elec. Registration Sys., Inc.*, 794 F. Supp. 2d 1060, 1065 (D. Minn. 2011), *aff'd*, 685 F.3d 663 (8th Cir. 2012); *Pennsylvania Ship Supply, Inc. v. Fleming Int'l, Ltd.*, 113 F. Supp. 2d 760, 764 (E.D. Pa. 2000). Plaintiffs argue that they are entitled "to view and inspect the books and records of the general partnership and they have been refused despite constant requests." (Doc. No. 1-2 at 9). Other than a fear that Defendants may sell the partnership property prior to an inspection of the books and records, Plaintiffs have made no argument that they will be unable to get the information they seek through continuing to pursue this litigation and utilizing discovery mechanisms. The Court finds that an accounting would be an inappropriate remedy at this time.

IT IS SO ORDERED.

*Eli Richardson*

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE