IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

RAJENDRA PATEL, NAVNEET PATEL,  )
and NAVRAJ GROUP, LLC (a Tennessee )
Limited Liability Company),    )
             )  NO. 3:20-cv-00052
   Plaintiffs,      )  JUDGE RICHARDSON
             )
v.            )
             )
AR GROUP TENNESSEE, LLC (a New  )
Jersey Limited Liability Company), et al., )
             )
   Defendants.     )

## <u>MEMORANDUM OPINION</u>

Pending before the Court is "Defendants' Motion to Transfer Venue and/or Dismiss Plaintiffs' First Amended Complaint (Doc. No. 42, "Motion"). The Motion actually consists of two alternative motions: a motion to transfer venue (to the District of New Jersey) and an alternative motion to dismiss Plaintiffs' First Amended Complaint. In other words, via the Motion, Defendants ask this Court to transfer this action to federal district court in New Jersey or, failing that, to dismiss the First Amended Complaint.

Plaintiffs have responded to the Motion. (Doc. No. 44). Defendants have replied. (Doc. No. 45). The Motion is ripe for review.

For the reasons discussed herein, the Motion will be granted in part and denied in part. More specifically, the motion to transfer venue will be denied, and the motion to dismiss will be denied as moot. The Court will dismiss *sua sponte* without prejudice Plaintiffs' First Amended Complaint, with any amended complaint to be filed within 21 days.

## PLAINTIFFS' FACTUAL ALLEGATIONS

The allegations in the First Amended Complaint (Doc. No. 36, "Amended Complaint") regrettably fail to make sense in various ways, and yet it falls to the Court to summarize them here as best it can without trying unduly to rewrite the allegations to say what the Court suspects Plaintiffs perhaps meant to say or to say what a subsequent filing of Defendants suggests Plaintiffs should have said.[1] In the following paragraphs, the Court sets forth those facts that it accepts as true (for purposes of both the motion to dismiss and motion to transfer venue) but also describes certain allegations that the Court cannot accept as true for any purposes because they are not well-pleaded as defined below.[2]

---

[1] The Court here is referring to the below-referenced declaration of Dinesh Goswami. As indicated below, this declaration can be considered in deciding the motion to transfer venue but must be ignored in deciding the motion to dismiss.

[2] The allegations mentioned in this section are taken from the Amended Complaint (Doc. No. 36), which is the operative complaint in this matter. *See Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000). Where the Court is treating a factual allegation as true for purposes of the Motion, it so signals by stating the fact without qualification. If the Court somehow qualifies the statement, or delves into an analysis as to why the allegation cannot be accepted as true, the Court is not accepting the allegation as true. Likewise, the Court does not accept as true any legal conclusions set forth in the Amended Complaint by identifying legal conclusions as merely asserted (as opposed to accepted).

Given the serious allegations of criminal violations by Defendants, the Court emphasizes that although the Court assumes the truth of factual allegations for present purposes, the Court does not find or suggest in any way at this juncture that criminal violations actually occurred.

In resolving the motion to transfer venue, the Court acknowledges background facts from the Complaint that, based on the parties' briefing, do not appear to be in dispute . Additionally, the Court appropriately considers evidence outside the pleadings in resolving a motion to transfer. *Sacklow v. Saks Inc.*, 377 F. Supp. 3d 870, 877, n.3 (M.D. Tenn. 2019) (citing *U.S. v. Gonzales & Gonzales Bonds and Ins. Agency, Inc.*, 677 F. Supp. 2d 987, 991 (W.D. Tenn. 2010)). However, in so doing, the Court draws all reasonable inferences in favor of the plaintiffs. *Id.*; *Sheet Metal Workers' Health & Welfare Fund of N. Carolina v. Stromberg Metal Works, Inc.*, No. 3:19-CV-00976, 2021 WL 780728, at *2 (M.D. Tenn. Mar. 1, 2021) (Richardson, J.).

On or about June 5, 2017, Plaintiff Navraj Group, LLC ("Navraj") and Defendant AR Group Tennessee, LLC ("ARGT") entered into a document called a "Partnership Agreement" (Doc. No. 36-1)[3] for the purpose of owning and operating eleven Popeye's restaurant franchises in the Middle Tennessee area. (Doc. Nos. 36 at 3; 36-1 at 1, 5). More specifically, the Partnership Agreement provided that Plaintiff Navraj would own 15 percent of ARGT "and their 11 Popeyes in [the] Nashville, TN market." (Doc. No. 36-1 at 1). The so-called Partnership Agreement was signed on behalf of ARGT by some of its members/managers,[4] and on behalf of Navraj by the two individual Plaintiffs herein (Rajendra Patel and Navneet Patel).

As alleged by Plaintiffs and indicated by the Partnership Agreement, ARGT is a limited liability company (LLC), so one would think that Navraj would be a member of that LLC, with a 15 percent ownership interest in the LLC. But alas, that is not what the Amended Complaint alleges. Instead, for whatever reason, it alleges that "the express terms of the Partnership Agreement create a *general partnership* and *the Plaintiffs* own fifteen percent (15%) *of the partnership* and partnership properties."[5] (Doc. No. 36 at 3) (emphasis added). This is patently incorrect because in fact what the Partnership Agreement expressly provides is that *one* Plaintiff (Navraj) owns 15 percent of an *LLC* (namely, ARGT*),* which is simply not the same thing as a

---

[3] These were the only two parties to the Partnership Agreement. (Doc. No. 36-1 at 1, 5). Plaintiffs imprecisely and unhelpfully allege that "the parties" entered into the Partnership Agreement, seemingly implying that all parties to the instant lawsuit entered into the Partnership Agreement.

[4] The Partnership Agreement indicates via its three denominated signature lines that there were three persons who were each a "member/manager" of ARGT, namely the three individual Defendants. The copy filed by Plaintiffs with the complaint, however, bears the signature of only two of the three.

[5] For the time being, at least, the Court need not and does not take issue with any notion that the owner of an LLC owns not just his designated percentage of the *LLC,* but also the same percentage of *the assets owned in turn by* the LLC.

*general partnership*. And even if the entity at issue were a general partnership rather than an LLC, it untrue that the (so-called) Partnership Agreement *created* the general partnership; the Partnership Agreement contains no language purporting to *create* any entity and no language bestowing the other 85 percent upon anyone (or indeed saying anything about who owns the other 85 percent). To the contrary, the Partnership Agreement is written as if ARGT already existed and that a 15 percent ownership interest of this existing entity was being bestowed upon Navraj.[6] Accordingly, the Court cannot and does not accept the allegation that "the express terms of the Partnership Agreement create a *general partnership* and *the Plaintiffs* own fifteen percent (15%) *of the partnership* and partnership properties." The consequences of this non-acceptance will be explained later herein as appropriate. For present purposes, suffice it to say that with respect to the matter of who on the Plaintiffs' side owned what, the Court accepts as true that (and only that) Navraj owned 15 percent of an entity called ARGT (which based on its very name was at least *supposed* to be an LLC).

The Court does not venture a guess as to what kind of entity ARGT was supposed to be, a question clouded by the title of the Partnership Agreement and the fact that Navraj's signature block in the Partnership Agreement identified it as a "partner." Notwithstanding these incongruous references to a "partner[ship]," it is undeniable that what the Partnership Agreement *expressly* did in pertinent part was to make Navraj an owner—called a "member" in LLC parlance—of an *LLC*, namely, ARGT. On the other hand, given Plaintiffs' allegations that ARGT was a "partnership," the Court cannot conclude that ARGT was actually run as an LLC as it should have been.

---

[6] As to where exactly this 15 percent interest was coming from, the Partnership Agreement does not indicate. One possibility (which the Court believes for multiple reason is more likely) is that it was coming from an existing owner of ARGT, and another possibility is that it was coming directly from ARGT via its creation of essentially new ownership units (for Navraj) that served to dilute the combined ownership interest of the other owners from 100 percent to 85 percent.

Ultimately, although it is quite clear that the *express terms* of the Partnership Agreement suggest that it relates not to a partnership at all but rather to an LLC, it unclear whether ARGT actually was properly organized, owned, or functioned as an LLC rather than as a partnership.

Accordingly, where the Court refers below to Plaintiffs' allegations regarding a "partnership," it is with the understanding that the Court cannot and does not (i) accept as true that there was *legally* any partnership, or (ii) infer from the Amended Complaint any fact(s) one way or the other as to what ARGT *de facto* actually was in practice

In March 2018 (nine months after the execution of the Partnership Agreement), the parties entered into a First Amendment to the Operating Agreement of [ARGT] (Doc. No. 36-2, "First Amendment to Operating Agreement"). According to the Amended Complaint, "[t]hese two documents comprise the only written agreements with respect to AR Group Tennessee, LLC ("ARGT"). (Doc. No. 36 at 3). But this allegation is patently incorrect, because the First Amendment to Operating Agreement makes clear that (naturally) there was an *original* operating agreement between the parties—dated March 11, 2017—and that, moreover, the original operating agreement "remain[ed] in full force and effect" except to the extent amended by the First Amendment to Operating Agreement. (Doc. No. 36-2 at 4). Regrettably, the original operating agreement has not been filed. But the First Amendment to the Operating Agreement repeatedly refers to ARGT as an LLC and repeatedly identifies the three individual Defendants and the two individual Plaintiffs as "members"—*i.e.*, (part) owners of an LLC.[7] Moreover, it refers to Defendant Ali Butts "sell[ing] fifteen percent (15 percent) of membership interest to" the two

---

[7] Bizarrely, adjacent to where the First Amendment to Operating Agreement states the percent of ARGT owned respectively by the two individual Plaintiffs collectively and each of the three individual Defendants separately, it identifies each as a "limited partner." (Doc. No. 36-2 at 3). Such verbiage is entirely inconsistent not only with an LLC, but also with a general partnership.

individual Plaintiffs (Doc. No. 36-2 at 2) thus indicating that the fifteen percent transfer contemplated by the Partnership Agreement ultimately would *not* go to Navraj (contrary to the expectation set forth in the Partnership Agreement nine months earlier)[8] and reinforcing that the 15 percent interest granted in the Partnership Agreement was in an *LLC* and not a general partnership. Thus, this document further casts serious doubt on the notion that a general partnership rather than an LLC was involved here and also clouds the issue of which Plaintiff(s) owned the 15 percent interest in ARGT—an issue that the Amended Complaint does absolutely nothing to clarify.[9]

In seeking to understand the complaint, the Court has considered the possibility that Plaintiffs mean to allege something along the lines of the formation (via the Partnership Agreement) of a general partnership (owned 15 percent by Navraj Group) that in turn became a member of ARGT. Something like this might explain why the Amended Complaint refers to a general partnership existing separately and alongside ARGT. (Doc. No. 36). But the Court simply cannot come close to teasing this out of the Amended Complaint and the attachments thereto, none of which suggest that a general partnership (or, for that matter, a limited partnership) ever was an owner of ARGT. Ultimately, the Court is at a loss as to which Plaintiff(s) allegedly owned an interest in what entity or entities, and how these entities (if indeed there are multiple entities) relate

---

[8] The Partnership Agreement had granted the 15 percent interest *not* to the individual Plaintiffs, but rather to Navrav, LLC. Of course, Navrav, LLC, is distinct from the individual Plaintiffs in a legal sense, but also possibly (as far as one can tell from the Amended Complaint) even in a more *de facto* sense, since the Court does not see where the Amended Complaint states that Navrav, LLC is owned entirely by one or the other of the individual Plaintiffs.

[9] Rather than saying that Navraj would own the 15 percent (as did the Partnership Agreement) or that the individual Plaintiffs would own 15 percent (as did the First Amendment to Operating Agreement), the Amended Complaint says only that "the Plaintiffs" own the 15 percent. (Doc. No. 36 at 3).

to one another. And this is problematic because an understanding (and perhaps the validity of) most if not all of Plaintiffs' claims depends on the Court understanding these things.

For example, to determine what (if any) fiduciary duties were actually owed to Plaintiffs, it is helpful (if not essential) to know what kind of entity (or what kind of entity's decision-makers) supposedly owed those duties and how they were legally situated via-a-vis particular Plaintiff(s). Additionally, to determine the extent to which any Plaintiffs had title to, or a right to possession of, the entity's assets—a key issue in assessing a conversion claim under Tennessee law or New Jersey law—it is vital to understand what kind of entity this was. And to assess the extent to which this case involves one or more Defendants violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* it is important to know what kind of entity ARGT (an alleged RICO enterprise) supposedly was—and how, considering what kind of enterprise it is, the individual Defendants conducted its affairs, invested in it, and gained control of it in violation of RICO as alleged. As noted, the Court cannot treat as true any facts whatsoever as to what *kind* of entity ARGT was, in either a legal sense or in a *de facto* and practical sense.

Ultimately, these deficiencies are not automatically fatal to any claims in the Amended Complaint. However, unhelpfully for Plaintiffs, the Court is relegated to viewing the Amended Complaint in light of its lowest common denominator. That is to say, since the Court simply cannot accept as factually true any allegations regarding the kind of entity ARGT is (or was), it views ARGT as a jointly-owned entity of no particular legal or *de facto* nature.[10] And the Court cannot treat as a fact any particular assertion about which Plaintiff(s) own the 15 percent interest, because

---

[10] The below-referenced declaration of Dinesh Goswami contains content that (to the extent accurate) would shed some (but only some) light on these issues. But the Court cannot consider that declaration in adjudicating Defendants' motion to dismiss and instead is confined to the well-pled facts in the complaint, the attachments to the amended Complaint, and reasonable inferences therefrom that can be drawn in Plaintiffs' favor.

the Amended Complaint and its attachments fail to converge on any particular factual assertion on that point. The question becomes whether, in light of the very general character of the accepted facts regarding the nature of ARGT, and the uncertain identity of the Plaintiff(s) who own the 15 percent of ARFT, the Amended Complaint plausibly suggests an entitlement to relief on each of Plaintiffs' respective claims.

Defendants orally misrepresented various financial data prior to Plaintiffs entering into the Partnership Agreement. (*Id.* at 3-4). These statements were made in Monmouth Junction, New Jersey. (*Id.* at 4).

Defendants have collectively misappropriated money from the partnership and converted money which would otherwise have been payable to Plaintiffs for their own use and benefit. (*Id.* at 4). Defendants have refused Plaintiffs' requests to inspect the books and records of the partnership and have taken away Plaintiffs' banking access. (*Id.* at 4-5). Defendants also have not informed Plaintiffs of material partnership and corporate actions, such as negotiations regarding a proposed sale of the business. (*Id.* at 5). Defendants produced a false Letter of Intent from a potential buyer in order to increase the sales price of the business (and refused to share offers or other written documents regarding the sale), despite the buyer not having been approved by Popeye's parent company. (*Id.*). Defendants "constantly and continuously" falsified the books of the enterprises to show them to be unprofitable during this time period. (*Id.*).

Plaintiffs assert that Defendants took part in a pattern of racketeering activity,[11] including mail and wire fraud, transporting aliens illegally in the United States across state lines, and employing aliens illegally in the United States. (*Id.* at 5-6). Defendants made payments on personal

---

[11] To the extent that this constitutes a legal conclusion regarding Defendants' activity, the Court does not presume it to be true.

debts to bank accounts located and accessed in Tennessee from proceeds from the LLCs by directing payments to an entity called RYR Investments, LLC, on a monthly basis. (*Id.* at 7-8). Defendants also transported illegal aliens from New Jersey to Tennessee to work at the Popeye's franchises, resulting in a fine from the United States Department of Labor. (*Id.* at 11).[12]

## PLAINTIFFS' CLAIMS

The Amended Complaint asserts ten causes of action,[13] several of which are so-called "civil RICO" claims *i.e.*, claims for civil remedies under 18 U.S.C. § 1964(c) based on alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* The various claims are of the following types: a) intentional misrepresentation (multiple counts); b) conversion; c) action for accounting; d) conducting the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c); e) investing in an enterprise income derived through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(a); f) acquiring interests in and control over an enterprise through a pattern of racketeering activity, in violation of § 1962(b); g) conspiracy to violate 18 U.S.C. §§ 1962(a), (B), and (c), in violation of 18 U.S.C. § 1962(d); h) breach of contract; i) retaliatory discharge; and j) breach of fiduciary duty under

---

[12] The purpose of this section is to identify those facts that the Court does and does not accept as true for purposes of the *motion to dismiss.* So in this section, any purported facts that can be gleaned from the declaration of Dinesh Goswami (or the attachments thereto) filed by Defendants are not included in this section, but they have been considered (and cited as appropriate below) by the Court in considering the motion to transfer venue.

[13] The Amended Complaint identifies the causes of action as the "First Cause of Action" through the "Tenth Cause of Action." Herein, for ease of reference, the Court refers to them as Count I through Count X. The Court notes that to the extent that Plaintiffs purport to include "multiple counts" within their "First Cause of Action [for] Intentional Misrepresentation," the Court's terminology is not dispositive of the issue (should it ever be raised for some material purpose) of whether Plaintiffs are properly deemed to have asserted a single count of intentional misrepresentation or multiple counts of intentional misrepresentation.

Tennessee and New Jersey law. Plaintiffs seek monetary damages, a complete accounting of the books and records of each of Defendants' companies, and the appointment of a receiver.

**LEGAL STANDARDS**

1. Venue

Although the law is not necessarily as developed on this point as it could be, this Court has indicated that in considering a motion to transfer venue, the [factual] allegations of the complaint should be taken as true. *See Sardeye v. Wal-Mart Stores E., LP*, No. 3:18-CV-01261, 2019 WL 4276990, at *1 (M.D. Tenn. Sept. 10, 2019) Another court has stated, more precisely, that in considering a motion to transfer venue, the court accepts all well-pleaded [factual] allegations in the complaint as true unless controverted by the defendants' affidavits. *See Plotkin v. IP Axess, Inc.*, 168 F. Supp. 2d 899, 900 (N.D. Ill. 2001). The Court believes this to be the appropriate standard and uses it accordingly. But this begs the question of what is meant by "well-pleaded" allegations. The case law is rather scarce on this point. But for present purposes, suffice it to say that the Court will not treat as well-pleaded any factual allegations that make no sense in light of, or are flatly inconsistent with, other allegations in the Amended Complaint. The Court has endeavored above to identify those factual allegations that it does not accept as true (because they are not well-pleaded) as well as those factual allegations it does accept as true, and it will proceed accordingly.

The standard for transfer of venue to a more convenient forum is found in Section 1404, which provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *TailGate Beer, LLC v. Boulevard Brewing Co.*, No. 3:18-cv-00563, 2019 WL 2366948, at *7 (M.D. Tenn. June 5, 2019). "The burden rests with the moving party to establish that venue should be transferred." *Winnett v. Caterpillar, Inc.*, 3:06–cv–00235, 2006 WL

1722434, *2 (M.D. Tenn. June 20, 2006). Unless the balance is strongly in favor of the defendant, a plaintiff's choice of forum should rarely be disturbed. *TailGate Beer, LLC*, 2019 WL 2366948, at *7. A defendant must make a clear and convincing showing that the balance of convenience strongly favors the alternate forum. *Id.*

In considering a motion to transfer, a court balances case-specific factors, including the private interests of the parties[14] and public-interest concerns,[15] such as systemic integrity and fairness. *Id.*; *see also Ingram Barge Co., LLC v. Bunge N. Am., Inc.*, 455 F. Supp. 3d 558, 569 (M.D. Tenn. 2020). A district court "has broad discretion to grant or deny a motion to transfer [a] case." *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994), cited in *Sardeye v. Wal-Mart Stores East, LP*, Case No. 3:18-cv-01261, 2019 WL 4276990, at *3 (M.D. Tenn. Sept. 10, 2019). "Although a plaintiff's choice of forum is generally given deference, that choice may be defeated, especially in cases when the plaintiff has little or no connection to the chosen forum." *Harris v. Parker*, No. 3:20-cv-01110, 2021 WL 229651, at *3 (M.D. Tenn. Jan. 22, 2021).

2. Motion to Dismiss under 12(b)(6)

For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[14] Private interests include location of willing and unwilling witnesses, residence of the parties, location of sources of proof, location of the events that gave rise to the dispute, systemic integrity and fairness, and plaintiff's choice of forum. *Tailgate Beer*, 2019 WL 2366948, at *7.

[15] Public interests include enforceability of the judgment, practical considerations affecting trial management, docket congestion, local interest in deciding local controversies at home, and familiarity of the trial judge with the applicable state law. *Tailgate Beer*, 2019 WL 2366948, at *7.

defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 1950. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*.; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id*. at 681. The question is whether the remaining allegations – factual allegations, *i.e.*, allegations of factual matter – plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Federal Rule of Civil Procedure 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id*. at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Rule 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to

the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.,* 219 F.Supp.3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

On a Rule 12(b)(6) motion to dismiss, "[t]he moving party has the burden of proving that no claim exists." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield,* 552 F.3d 430, 433 (6th Cir.2008). That is not to say that the movant has some *evidentiary* burden; as should be clear from the discussion above, evidence (as opposed to *allegations* as construed in light of any allowable matters outside the pleadings) is not involved on a Rule 12(b)(6) motion. The movant's burden, rather, is a burden of *explanation*; since the movant is the one seeking dismissal, it is the one that bears the burden of explaining—with whatever degree of thoroughness is required under the circumstances—why dismissal is appropriate for failure to state a claim.

## DISCUSSION

### A. Venue

It is undisputed that this Court is a proper venue for litigating this action. However, Defendants move this Court to transfer the case to the United States District Court for the District of New Jersey ("District of New Jersey") pursuant to § 1404(a). Additionally, neither party disputes that this case could have originally been brought in the District of New Jersey. The Court therefore will turn to determining whether the factors indicate that the Court, in its discretion, should transfer this case to the District of New Jersey. In support of their Motion, Defendants have filed a declaration.[16]

---

[16] The Court may properly consider facts outside the pleadings in resolving a motion to transfer venue, but the Court draws all reasonable inferences in favor of the (non-movant) plaintiffs. *See e.g.*, *Sacklow v. Saks Inc.*, 377 F. Supp. 3d 870, 877 n.3 (M.D. Tenn. 2019) (collecting cases). However, as will be discussed below, the Court cannot consider this declaration or other evidence outside the pleadings when ruling on the Motion to Dismiss portion of the Motion.

The undersigned here will reiterate what he has said previously about multi-factor tests generally:

> "The undersigned has noted on multiple occasions that multi-factor (or balancing) tests, though often having considerable desirability and merit, tend to foster outcomes that are unpredictable on the front end, given such tests' subjectivity." *Memphis A. Phillip Randolph Inst. v. Hargett*, No. 3:20-CV-00374, 2020 WL 5095459, at *16 (M.D. Tenn. Aug. 28, 2020) (quoting Eli J. Richardson, *Eliminating the Limitations of Limitations Law*, 29 Ariz. St. L.J. 1015, 1050 (1997) (proposing a multi-factor test to resolve civil limitations issues, while conceding that when courts "apply[ ] a multi-factor test, [it is] always an unpredictable endeavor") and Eli J. Richardson, *Taking Issue with Issue Preclusion: Reinventing Collateral Estoppel*, 65 Miss. L.J. 41, 95 (1995) (proposing multi-factor test to resolve collateral estoppel issues, while conceding that its drawback is that it "would produce unpredictable resolutions of collateral estoppel issues, in that it is so flexible and calls for very subjective judicial determinations")).

*Acosta v. Peregrino*, No. 3:17-CV-01381, 2020 WL 5995049, at *6 (M.D. Tenn. Oct. 9, 2020). It is hard for the Court to purport to announce the (sole) "right" answer to the question posed here, which must be answered by resorting to the prescribed multi-factor test. What the Court must do (and can do) instead, is call it like it sees it, announcing whether in its view the factors collectively support transfer. To that end, the Court will weigh each factor in turn.

### 1. Convenience of the witnesses and parties[17]

"The convenience of the witnesses is often considered to be the most important factor when determining which forum is the most convenient." *Oakley v. Remy Int'l, Inc.*, No. 2:09-0107, 2010 WL 503125, at *4 (M.D. Tenn. Feb. 5, 2010) (collecting cases). "The determination of the convenience of witnesses is not merely a 'head count,' but includes a consideration of the importance of each witness and 'includes both non-party witnesses outside the scope of the Court's subpoena power and the geographic location of any witnesses likely to testify in the case.'" *Id.*

---

[17] Defendants argue that the fact that Plaintiffs left New Jersey and recently relocated should show that this factor weighs in their favor. (Doc. No. 42 at 11-12.) But this factor concerns where the parties *are* located, not where they *were* located at some prior time. The Court therefore disregards this argument.

(quoting *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1193 (S.D. Cal. 2007)).

The declaration attached to the Motion (provided by Dinesh Goswami) notes that all three individual Defendants live in new Jersey, and it also identifies three expected non-party witnesses who are not located in Tennessee: (1) Imran Shahid, previously an Area Manager for ARGT in Tennessee who now works in Queens, New York; (2) Moshin Daud, a manager who relocated to Nashville to assist with the restaurants in dispute but was expected to return to New Jersey (a return that the Court will assume *arguendo* in fact occurred); and (3) Salman Ahmed, the Comptroller of ARGT who is located in Monmouth Junction, New Jersey. (Doc. No. 41-1 at 4).

Plaintiffs do not identify the locations of any witnesses (or even the names of any witnesses beyond, presumably, themselves), but they argue that the three individuals identified by Defendants could be compelled to appear in Tennessee (as employees of Defendants) and that Daud had not moved back to New Jersey at the time the Motion was filed. (Doc. No. 44 at 5). It is true that courts have been less likely to find that this factor weighs in favor of transfer when the witnesses at issue are employees of the party seeking transfer. *See Sardeye v. Wal-Mart Stores E.*, LP, No. 3:18-CV-01261, 2019 WL 4276990, at *4 (M.D. Tenn. Sept. 10, 2019). Additionally, Daud had not returned to New Jersey at the time of the filing of this Motion, and Defendants have not updated the Court regarding whether Daud moved to New Jersey. The Court must make all reasonable inferences in favor of Plaintiffs. *Sacklow*, 377 F. Supp. 3d at 877 n.3.

Therefore, the Court finds that this factor is neutral.

2. Residencies of the parties

As noted, all Defendants reside in New Jersey. (Doc. No. 42 at 11). All Plaintiffs reside in Tennessee. (Doc. No. 44 at 6). Therefore, the Court finds that this factor is neutral.

3. <u>Location of sources of proof</u>

Arguing that this factor weighs in their favor, Defendants assert that "[a]ll books and records, and likely witnesses with personal knowledge of the current dispute are in New Jersey" (Doc. No. 42 at 12). For this assertion, Defendants cite paragraphs 3 and 9-16 of Dinesh Goswami's declaration. Paragraphs 9 and 10, however, do not support this assertion at all, as they describe where certain events took place rather than where any records or witnesses are located. On the other hand, paragraph 3 notes that ARGT's principal offices are located in New Jersey, and paragraph 15 notes that "the ARGT records" are located in New Jersey; from this, the Court concludes that some (though by no means necessarily *all*) relevant records are located in New Jersey.

Except as indicated in the preceding paragraph, the cited portion of Dinesh Goswami's declaration relates to where the individual Defendants and non-party witnesses are located—circumstances already accounted for in the analysis above and thus circumstances on which the Court declines to rely (duplicatively) at this stage of the analysis.

With respect to books and records, Plaintiffs respond by (correctly) noting that this factor is typically considered to be neutral in the modern age; indeed, that was the case even a dozen years ago, when technology was less advanced than it is today. *See Sony/ATV Music Pub. LLC v. CAVS USA, Inc.*, No. 3:08-0265, 2009 WL 2177110, at *9 (M.D. Tenn. July 21, 2009) ("[T]his factor is generally considered neutral given the present technology for producing documents in distant places."). Plaintiffs also note that since the books and records for the Tennessee businesses at issue are maintained in New Jersey, they likely have previously been transferred between these states or exist in a digital format. (Doc. No. 44 at 6). Defendants have pointed the Court to no special circumstances that exist in this case that would make this factor lean in their favor, as opposed to being neutral.

Therefore, the Court finds that this factor is neutral.

4. <u>Location of events giving rise to the dispute</u>

"A fundamental principle guiding the Court's analysis of a motion to transfer is that litigation should proceed in that place where the case finds its center of gravity." *N. Am. Demolition Co.*, 2005 WL 1126747, at *3 (internal quotation marks and citation omitted). As stated, this principle sounds almost dispositive, as if the general rule is that a motion to transfer to a particular district should be granted, irrespective of other factors, if that district is found to be the center of gravity. But this "fundamental" principle" only goes so far, as it must be viewed in harmony with the above-stated recognized principle that generally a plaintiff's choice of forum (if legally proper) rarely should be disturbed. In other words, it would go too far to say that transfer *always* "should" be made to wherever the "center of gravity" is. But the Court does indeed need to determine where the "center of gravity" is properly pegged and take the location of the center of gravity into account.

"Center of gravity" in this context is not a legal term of art but rather a metaphor, and an inexact one at that. Nevertheless, the concept is not particularly difficult to grasp; it is a reference to the place of occurrence of the majority (or perhaps plurality) of relevant events or, perhaps, events of greatest significance.

Defendants argue that the events giving rise to this case occurred in New Jersey, including the parties' dealings, negotiations, execution of agreements, and training. (Doc. No. 42 at 12). Defendants also claim that although the physical locations of the Popeye's restaurants at issue are in Tennessee, the dispute stems from Plaintiffs' interest in ARGT and their monetary claims—not the locations of the restaurants or any occurrences at the Tennessee restaurants. (*Id.*). Plaintiffs respond that Defendants are ignoring the claims in their Amended Complaint that allege acts that

occurred in Tennessee, such as the employment of illegal aliens, failure to pay wages, and racketeering activity. (Doc. No. 44 at 7).

The Court agrees with Defendants that, in reference to Count I (intentional misrepresentation) the location giving rise to this dispute was clearly New Jersey. Plaintiffs pled in their Amended Complaint that the intentional misrepresentations of Defendants occurred in Monmouth Junction, New Jersey prior to them signing the contract. (Doc. No. 36 at 4). However, other Counts in the Amended Complaint arise from alleged conduct in Tennessee or both Tennessee and New Jersey, such as racketeering activity and illegal aliens crossing state borders, particularly Count II (conversion), Count IV (civil RICO, *i.e.,* violation of 18 U.S.C. § 1962(c)), Count V (civil RICO, *i.e.*, violation of 18 U.S.C. § 1962(a)); Count VI (civil RICO, *i.e.*, violation of 18 U.S.C. § 1962(b)), and Count VII (civil RICO, *i.e.*, violation of 18 U.S.C. § 1962(d)). The counts for breach of contract (Count VIII), retaliatory discharge (Count IX), and breach of fiduciary duty (Count X) also seem to arise from activity in both states, as allegedly the agreement was initially entered into in New Jersey but breached by (among other things) conduct in Tennessee.

The Court cannot find that the "center of gravity" of this case is in New Jersey, when much of the conduct alleged in the Amended Complaint occurred in Tennessee, or in both Tennessee and New Jersey.

Therefore, the Court finds that this factor is neutral.

### 5. Systemic integrity and fairness (public interest)

"Public interest factors include: (i) the enforceability of the judgment; (ii) practical considerations affecting trial management; (iii) docket congestion; (iv) the local interest in deciding local controversies at home; (v) the public policies of the fora; and (vi) the familiarity of

the trial judge with the applicable state law." *N. Am. Demolition Co. v. FMC Corp.*, No. 5:05CV0104, 2005 WL 1126747, at *2 (N.D. Ohio Apr. 28, 2005). Courts frequently look at which state has a more significant interest in the matter and whether one district court is more qualified to apply the law at issue than another court. *Stewart*, 2010 WL 4537039, at *4; *Oakley*, 2010 WL 503125, at *6.

Defendants claim that Plaintiffs agreed (jointly with Defendants) that New Jersey law would "govern[ ] this dispute" and that the business is located in and the agreement was made in New Jersey (presumably alluding to New Jersey's interests in regulating affairs of the businesses located therein). (Doc. No. 42 at 13). Defendants also mention as considerations the enforceability of judgments and trial management. (*Id.*). Plaintiffs respond that a federal court in Tennessee is "just as well equipped to apply New Jersey law as the one sitting in New Jersey," and that the case involves Tennessee limited liability companies and potentially continuing violation of labor laws in Tennessee, indicating that this Court should have "as much interest in adjudicating this dispute as the ones in New Jersey." (Doc. No. 44 at 7). Because, as explained below, the Court declines at this time to review the sufficiency of Plaintiffs' Amended Complaint under Fed. R. Civ. P. 12(b)(6), the Court need not (and will not) presently determine which state's laws govern any of Plaintiffs' claims.

There are two problems with Defendants' position from the outset. First, Plaintiffs did not agree that New Jersey law would govern all of "this dispute." Indeed, at the time of entering into the Partnership Agreement, Plaintiffs could not have known what all "this dispute" would end up encompassing. Instead, Plaintiffs agreed only that New Jersey law would govern the Partnership Agreement (and issues thereunder concerning validity, construction, capacity, and performance); as manifested by Plaintiffs' claims, however, the current dispute transcends the Partnership

Agreement to an extent and includes several RICO counts, which obviously are governed by federal rather than New Jersey law. The RICO claims may or may not be meritorious, but in the Partnership Agreement Plaintiffs did not agree either: (i) (non-sensically) that New Jersey law would govern (federal) RICO claims; or (ii) that a New Jersey federal court should hear federal RICO claims. In short, although Defendants are correct that the parties agreed that New Jersey law would govern the Partnership Agreement, Defendants do not account for the fact that the Amended Complaint asserts not just state- law claims, but also federal (civil RICO) claims.

Second, the Court is unsure of Defendants' point in asserting the enforceability of judgments and trial management being special (and relevant) considerations in this case. The Court is aware of no reason that a judgment entered by this Court would not be enforceable to the same extent as a judgment entered by the District of New Jersey, and the parties do not seem to have issues complying with the various orders entered in this case thus far (constituting pretrial management). Courts have found that the presence of a federal question (such as one implicated by a federal claim) discounts the application of the public-interest factor. *Oakley*, 2010 WL 503125, at *6 (collecting cases and noting that "the federal questions presented lessen localized concerns"); *Sardeye, LP*, 2019 WL 4276990, at *5 (quoting *Oakley*). Though this Court may not be quite as equipped to apply New Jersey state law (with which it is relatively unfamiliar) as a federal court sitting in New Jersey if New Jersey law ultimately applies to some claims in this case, But the reverse is true as well; to the extent that it turns out that Tennessee law ultimately applies, this Court would have the advantage over a New Jersey federal court in terms of relatively familiarity with Tennessee law. And this Court is just as capable as a New Jersey federal court of applying federal law, namely RICO.

Therefore, the Court finds that this factor to be neutral.

6. Plaintiff's choice of forum

"The plaintiff's choice of forum is accorded some deference and given substantial weight, although it is not a dispositive factor." *Forward Air, Inc.*, 2001 WL 34079306, at *5.

The Court finds that this factor weighs substantially against Defendants.

7. Other factors

Neither party has argued that the Court should consider other factors in its analysis here. And the Court is aware of no other factors that would indicate that venue should or should not be transferred.

On balance of all the factors, the Court finds that it should retain venue over this matter, as Defendants have failed to carry their "considerable" burden of showing that "the balance is strongly in favor of the defendant." *Big G Exp. Inc.*, 2008 WL 2400947, at *2. Most of the factors analyzed are neutral, with two of the most significant factors favoring Plaintiffs.

Therefore, the Court will deny Defendants' Motion as it pertains to transferring venue.

B.  <u>Motion to Dismiss</u>[18]

In their Motion to Dismiss, Defendants move to dismiss all of Plaintiffs' claims except for Count VIII (for breach of contract). (Doc. No. 42 at 1 n.1). Defendants seek dismissal of these claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The Court, however, declines to reach any consideration of whether Plaintiffs meet 12(b)(6) pleading requirements. Instead, the Court finds that Plaintiffs fail to meet the pleading requirements of Federal Rule of Civil Procedure 8(a). Federal Rule of Civil Procedure 8(a) requires that a pleading contain: "(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief." Further, "there is

---

[18] As discussed above, when ruling on a motion to dismiss, matters outside the pleadings may not be considered unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.,* 219 F.Supp.3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018). In contrast, when considering a Motion to Transfer Venue, the Court appropriately considers evidence outside the pleadings in resolving a motion to transfer. *Sacklow v. Saks Inc.*, 377 F. Supp. 3d 870, 877, n.3 (M.D. Tenn. 2019) (citing *U.S. v. Gonzales & Gonzales Bonds and Ins. Agency, Inc.*, 677 F. Supp. 2d 987, 991 (W.D. Tenn. 2010)). The Court notes that, though it could consider the Goswami Declaration when deciding the Motion as it pertains to transferring venue, when analyzing a 12(b)(6) motion to dismiss the Court cannot consider any extrinsic document that was not both referenced in and integral to the Amended Complaint. The Court therefore disregards Defendants' arguments that the Amended Complaint is inaccurate in its characterizations or that Plaintiffs had a duty to counter the accuracy of this Declaration for purposes of a motion to dismiss under Rule 12(b)(6). (*E.g.*, Doc. No. 42 at 28). The Court also notes that in the Reply, Defendants attempt to rely on extraneous evidence (such as an Investment Agreement with RYR Investments) which the Court cannot (and does not) consider where, as here, it declines to convert the motion into one for summary judgment. (Doc. No. 45 at 3).

no 'duty (on the part) of the trial court or the appellate court to create a claim which appellant has not spelled out in his pleading.'" *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975), *quoting Case v. State Farm Mutual Automobile Insurance Co.*, 294 F.2d 676, 678 (5th Cir. 1961). Courts may dismiss a complaint sua sponte for noncompliance with Rule 8(a)(2) when "the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Dorisca v. Rawls*, No. 18-CV-9756 (JGK), 2019 WL 2085360, at *2 (S.D.N.Y. May 10, 2019), *quoting Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (quotation marks and citation omitted); *see also Hill v. Blount Cty. Sch.*, No. 3:14-CV-96-PLR-HBG, 2015 WL 13813827, at *4 (E.D. Tenn. Mar. 9, 2015) (Where a complaint fails to comply with Rule 8, the district court has the power, on motion or *sua sponte*, to dismiss the complaint[.]")

As described above, the Court simply cannot parse out a clear set of facts or allegations from the Amended Complaint in order to understand the business relationship between Plaintiffs and Defendants. In other words, the Court simply cannot tell who or what allegedly had what business relationship(s) with whom or what, and what document(s) allegedly governed which such relationships. Plaintiffs have not made a plain statement identifying the nature of the agreement or relationship between the parties (whether it be a partnership, an LLC, some other arrangement, or some combination thereof), and the Court has no duty to draw any inferences or conclusions in an attempt to guess what the arrangement between the parties may have been. As suggested above, the particular nature of these relationships—far from being a matter of mere formalism—could hold the key to the validity of multiple claims (when viewed after or even at the pleading stage). Moreover, certain allegations of the Complaint appear entirely inconsistent with either other allegations of, or attachments to, the Amended Complaint.

Without a comprehensible and consistent statement of these crucial facts, the Court cannot construe the complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief," as required by Fed. R. Civ. P. Rule 8(a)(2), let alone make any findings pursuant to Rule 12(b)(6) and related case law. Plaintiffs' First Amended Complaint is thus sufficiently vague and unintelligible to warrant dismissal under Rule 8(a)(2). *See, e.g., Jones v. Nat'l Tire & Battery*, No. CV H-12-1333, 2012 WL 12903949, at *2 (S.D. Tex. July 20, 2012) (dismissing without prejudice a complaint that was "internally inconsistent and confusing [and thus] fail[ed] to provide 'a short and plain statement of the claim showing that the pleader is entitled to relief[.]'" (quoting Fed. R. Civ. P. 8(a)(2)). Thus, the Court will dismiss Plaintiffs' First Amended Complaint *sua sponte* on this basis.

However, the Court is very hesitant to entirely extinguish Plaintiffs' claims based on the Court's unavoidable confusion as to key allegations underlying them, when they conceivably could prove ultimately meritorious. This is especially true since the Court is dismissing the Amended Complaint *sua sponte* on this basis, as Defendants for whatever reason did not raise this basis. Under these circumstances, it is appropriate to allow Plaintiffs to re-plead their claims. *Mitchell v. Bradshaw*, No. 17-80334-CIV, 2017 WL 2779158, at *4 (S.D. Fla. June 27, 2017) (dismissing count because "[s]imply put, the Court cannot ascertain the allegations of this count and therefore cannot address its sufficiency," but granting the plaintiff leave to re-plead the count).

The Amended Complaint thus will be dismissed without prejudice, and Plaintiffs will have the option to file another amended complaint within 21 days of the entry of the Court's corresponding order, failing which this action will be dismissed with prejudice. The Court notes that, as the corresponding order will make claim, any amended complaint may differ from the

Amended Complaint only to address the deficiencies (confusion) identified herein, and not to otherwise substantively change the nature of existing claims or add additional claims.

Given this, Defendants' (alternative) motion to dismiss contained within the Motion will be denied as moot. The Court notes that the arguments set forth therein well may prove, in the eyes of Defendants, applicable to any amended complaint to be filed by Plaintiffs. If so, they may of course be asserted in a motion to dismiss such amended complaint, should Defendants choose to file one. In that regard, the Court wishes to reassure the parties that it conducted a considerable amount of work in analyzing the parties' respective arguments on the motion to dismiss before concluding that it would be inappropriate to resolve the motion to dismiss given the confusion fostered by the Amended Complaint as discussed herein. This conceivably could prove very helpful in moving this case along promptly—an important goal here, given the age of this case— in the event that Defendants decide to essentially renew particular arguments set forth in the motion to dismiss contained within the Motion.

## **CONCLUSION**

For the reasons set forth herein, the Motion will denied in its entirety, but Plaintiffs must file an (additional) amended complaint or suffer dismissal of their claims with prejudice.

An appropriate order will be entered.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE